UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

STANLEY F. MESSER,

        Plaintiff,

v.                            CASE No. 8:13-CV-1242-T-TGW

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

I.

The plaintiff, who was forty-nine years old at the time of the administrative hearing and who has a tenth grade education, has worked as a factory worker and welder (Tr. 45).  He filed claims for Social Security

---

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

disability benefits and supplemental security income payments, alleging that

he became disabled due to diabetes type 2, poor memory, and a head injury

(Tr. 168). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing

before an administrative law judge. The law judge found that the plaintiff has

severe impairments of diabetes mellitus and borderline intelligence quotient

(Tr. 26). She concluded that, with these impairments, the plaintiff (Tr. 28-

29):

> has the residual functional capacity to perform less
> than a full range of medium work as defined in 20
> CFR 404.1567(c) and 416.967(c). Specifically, the
> claimant can lift and/or carry 50 pounds
> occasionally and 25 pounds frequently; stand
> and/or walk about six hours in an eight hour day;
> sit about six hours in an eight hour day; unlimitedly
> push and/or pull consistent with the medium
> exertional level; never climb ladders, ropes, or
> scaffolds; occasionally climb ramps and stairs;
> frequently stoop and crouch; avoid concentrated
> exposure to extreme cold, extreme heat, vibration,
> fumes, odors, dust, gases, and poor ventilation; and
> avoid even moderate exposure to work hazards
> such as unprotected heights and dangerous
> machinery. In addition, he is limited to unskilled,
> simple, routine and repetitive tasks.

The law judge found that the plaintiff has no past relevant work (Tr. 32). However, based upon the testimony of a vocational expert, the law judge determined that the plaintiff could perform jobs that exist in significant numbers in the national economy, such as small products assembler, hand packer, and eye glass frames assembler (Tr. 33). The law judge therefore ruled that the plaintiff was not disabled (id.). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

A. In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). In this case, the plaintiff must show that

he became disabled before his insured status expired on March 31, 2005, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the

-4-

witnesses. <u>Grant</u> v. <u>Richardson</u>, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. <u>See</u> 20 C.F.R. 404.1520, 416.920. The initial question is whether the plaintiff is engaged in substantial gainful activity because, if so, the plaintiff will be found not disabled. 20 C.F.R. 404.1520(b), 416.920(b). If not, the next inquiry (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c), 416.920(c). An

impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities.   20 C.F.R. 404.1521(a), 416.921(a).  If there is not a severe impairment, then a claimant is deemed to be not disabled.  20 C.F.R. 404.1520(c), 416.920(c).

When an impairment is severe, but does not meet, or equal, a listing in Appendix 1 (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work.  20 C.F.R. 404.1520(f), 416.920(f).  If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy.  20 C.F.R. 404.1520(g), 416.920(g).

### III.

The plaintiff challenges the law judge's decision on five grounds.  None of those contentions warrants reversal.

A.  In two related arguments, the plaintiff asserts that the law judge failed to assess properly the opinions of the examining psychologists, Dr. Michael D. Eastridge and Dr. Melissa Trimmer.  These contentions fail.

-6-

Dr. Eastridge performed a psychological evaluation of the plaintiff on August 23, 2010, at the request of the plaintiff's attorney (Tr. 402-07). He administered the Rey-Osterrieth Complex Figure (a copying task), Trailmaking A & B, Wechsler Memory Scale-Revised Logical Memory subtests, and the Wechsler Adult Intelligence Scale-4 test (WAIS-4) (Tr. 403).[2] Dr. Eastridge indicated that the plaintiff's performance on the Trailmaking tests was impaired, and he "performed poorly" on the Wechsler Memory Scale-Revised Logical Memory subtests (Tr. 404). With regard to the copying test, Dr. Eastridge noted that the plaintiff's "drawing [was] sloppy, but generally accurate, but he ran out of paper, due to poor planning and organizational skills" (Tr. 403). On the WAIS-4, the plaintiff achieved a full scale IQ score of 65, a verbal comprehension index of 74, a perceptual reasoning index of 71, a working memory index of 77, and a processing speed index of 56 (Tr. 404-05). Dr. Eastridge's diagnosis included cognitive disorder NOS; mild mental retardation; and diabetes Type II, by history (Tr.

---

[2]"Trailmaking A is a simple 'connect-the-numbered-circles-in-order' task" (Tr. 404). With Trailmaking B, "the individual is required to use a pencil to connect circles with numbers and letters. He is required to alternate between numbers and letters, connecting the circles in the order of: 1-A-2-B-3-C ..." (id.).

406). He assigned the plaintiff a Global Assessment of Functioning ("GAF")

score of 45 (id.).[3]  Dr. Eastridge suggested that the plaintiff's mental

impairments be considered under Listings 12.02 and 12.05 (id.). With respect

to "Functional Limitations," Dr. Eastridge said (Tr. 406-07):

> Mr. Messer could not explain what he does during
> the course of a day.  He was driven to the
> appointment by his brother, so he does not drive.
> He gets up early in the morning, does some
> household chores, cooks meals, and cares for his
> own hygiene.
>
> Socially, he has no friends or group interaction,
> because he cannot drive to meet them.  However,
> as noted in this report, communication is impaired.
> He talks a lot, but the talk is "empty", devoid of
> almost any information.  His memory is impaired,
> and he cannot offer the most basic personal
> information.  Most of his conversation involves
> stereotyped responses, such as, "I'm sorry, I don't
> remember, sir", or, "Well, I ain't no genius", or, "I
> don't know much about that deal".  He is polite,
> but there is little in his conversation to stimulate
> interpersonal interest.   He is at risk to feel
> misunderstood and slighted, because it is genuinely

---

[3]The GAF scale "[c]onsider[s] psychological, social, and occupational functioning
on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual
of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34.  A rating of 41-50
reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent
shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g.,
no friends, unable to keep a job)" (id.).

almost impossible to get anything of substance from him.

With regard to concentration, persistence, and pace of work, he will demonstrate impaired task persistence. He can understand and follow very simple instructions, but becomes confused with visual arrays, and moderately complex instructions. He is distracted so much by his own mistakes that he cannot adequately "recover" from mistakes and continue to perform the simple task he was doing up until the error. The pace of performance is extremely slow (0.2 percentile rank, compared to others his age), and he is easily frustrated. He is unable to consistently maintain focus over a 15 minute span, and when he repeats what he has been told, he loses a very great amount of information and "changes" the gist of the rest of it. He is not fully self-aware, and is thus at greater risk for accidents and interpersonal misunderstandings.

Dr. Trimmer examined the plaintiff on September 30, 2009 (Tr. 336-40). The plaintiff reported a "history of memory problems," but "[h]e denie[d] any other mental health symptoms" (Tr. 337). The plaintiff also indicated that he was previously hospitalized for a head injury (id.). Although the plaintiff said that he could perform a number of activities of daily living, Dr. Trimmer noted that, "[d]ue to the claimant's limited insight, he may overestimate his own abilities" (Tr. 339).

Dr. Trimmer stated that the plaintiff was cooperative, and "[h]is manner of relating, social skills, and overall presentation was adequate" (Tr. 337). He had coherent and goal-directed thought processes, without evidence of delusions, hallucinations, or disordered thinking (id.). The plaintiff's attention and concentration were intact and he could perform counting and simple calculations, but his memory skills were in the "extremely low to borderline ranges" (Tr. 338). Dr. Trimmer opined that the plaintiff's "intellectual functioning is in the extremely low range. His general fund of information appears to be limited" (id.).

Dr. Trimmer administered the Wechsler Adult Intelligence Scale test (WAIS-III) and the Wechsler Memory Scale-III (WMS-III) (Tr. 338-39). With respect to the WAIS-III, she concluded that the plaintiff had a verbal scale IQ score of 67, a performance scale IQ score of 65, and a full scale IQ score of 64 (Tr. 338). Dr. Trimmer indicated that the difference in the plaintiff's scores on the WAIS-III and WMS-III tests "suggests a relative weakness or deficit in both immediate and delayed memory" (Tr. 339).

Dr. Trimmer diagnosed the plaintiff with a cognitive disorder and mild mental retardation (Tr. 340). She also said (Tr. 339):

-10-

> Vocationally, the claimant appears to be capable of understanding and following simple instructions and directions. He appears to be capable of performing simple tasks independently. He appears to be capable of maintaining attention and concentration for simple tasks. He has a fair ability to attend to a routine and maintain a schedule. He appears to have difficulty learning new tasks. He appears to use fair judgment when making routine decisions. He appears to be able to relate to and interact appropriately with others. He appears to be capable of dealing with stress.

After summarizing the reports of Dr. Trimmer and Dr. Eastridge, the law judge stated (Tr. 31):

> The undersigned has considered both these assessments as well as the opinions of Dr. Trimmer and Dr. Eastridge in finding the above limitations. However, Dr. Trimmer's assessment has been given greater weight as it appears more consistent with the medical evidence as a whole, including the claimant's reports and testimony of few limitations in his ability to perform activities of daily living. Further, it is emphasized that the claimant underwent the examination that formed the basis of Dr. Eastridge's opinion not in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for the current appeal. Further, the doctor was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it

was produced cannot be entirely ignored (Exhibits 7F and 12F).

The law judge further stated that Dr. Trimmer's opinion is supported by the opinions of nonexamining reviewers, Dr. Robert F. Schilling and Dr. Robert Hodes (id.).

The law judge reasonably afforded less weight to the opinion of Dr. Eastridge than to the opinion of Dr. Trimmer. As indicated, Dr. Eastridge said that the plaintiff "could not explain what he does during the course of a day" and "[s]ocially, he has no friends or group interaction, because he cannot drive to meet them" (Tr. 406). However, as the law judge discussed, the plaintiff's report of limited daily activities during his examination with Dr. Eastridge was "contrary to his previous reports that he engages in various activities of daily living and extensive social interaction" (Tr. 31).

Furthermore, Dr. Eastridge's opinion regarding the plaintiff's functional limitations with activities of daily living and social functioning is inconsistent with the substantial evidence of record. For example, on September 30, 2009, Dr. Michael Duchesneau, a consultative examiner, said (Tr. 329):

> The claimant is independent of his ADLs including cooking, cleaning, laundry, shopping, feeding, bathing, and dressing himself. Social activities the claimant's [sic] enjoys participating in include watching TV, visiting with family, listening to the radio, going out to dinner, going to the movies, and talking with friends on the phone.

As the law judge discussed, the plaintiff "indicated that he helps his mother with household chores such as mowing the yard, he is able to use public transportation, and that he visits with friends and other people he knows on a daily basis" (Tr. 29). In a function report, the plaintiff's mother stated that the plaintiff helps her clean the house, does laundry, shops for food, watches television, handles his own personal care, cares for a cat, and talks with the neighbor (Tr. 180-87). In his own function report, the plaintiff said "I do it all" in response to a question about household chores that he can perform (Tr. 200). The plaintiff also indicated that he cares for his mother and a cat, performs his own personal care, prepares simple meals, shops for food once a week, watches television, and goes out with friends once in a while (Tr. 198-205).

In sum, the record shows that the plaintiff had a substantially greater ability to carry out daily activities than Dr. Eastridge thought.

Consequently, the law judge could reasonably conclude that Dr. Eastridge, in forming his opinion, did not have an accurate perception of the plaintiff's capabilities. In contrast, the law judge could reasonably conclude that Dr. Trimmer's opinions were based on a greater understanding of the plaintiff's ability.

The plaintiff objects to the law judge's comments that Dr. Eastridge's opinion was generated at the request of the plaintiff's counsel and Dr. Eastridge was presumably compensated for his opinion (Doc. 20, p. 12). The law judge had reason to be skeptical about the objectivity of Dr. Eastridge's opinion because the examination was unnecessary; the record already contained the report from Dr. Trimmer, which included IQ test results. Consequently, the law judge could reasonably conclude that "the context in which [Dr. Eastridge's opinion] was produced cannot be entirely ignored" (Tr. 31). Nevertheless, the law judge also said "such evidence is certainly legitimate and deserves due consideration" (id.). Accordingly, the law judge stated that she had "considered both these assessments as well as the opinions of Dr. Trimmer and Dr. Eastridge in finding the above limitations" (id.). The law judge thus did not simply reject Dr. Eastridge's

-14-

opinion, but rather explained that "Dr. Trimmer's assessment has been given greater weight [than Dr. Eastridge's opinion] as it appears more consistent with the medical evidence as a whole, including the claimant's reports and testimony of few limitations in his ability to perform activities of daily living" (id.). As previously explained, the law judge had a valid basis for giving greater weight to Dr. Trimmer's opinion.

Moreover, as indicated, the law judge found that Dr. Trimmer's opinion was supported by the opinions of Dr. Schilling and Dr. Hodes (id.). Contrary to the plaintiff's assertion, there was nothing unreasonable in the law judge thinking that those psychologists support Dr. Trimmer's opinion.

The plaintiff argues that the law judge "totally ignored Dr. Trimmer's ... admonition that Plaintiff was likely to be overstating his own abilities because of his lack of insight and her opinion that he would have difficulty learning new tasks" (Doc. 20, p. 14). This assertion fails.

In the first place, there is no reason to conclude that the law judge "totally ignored" this evidence. Thus, as indicated, the law judge discussed Dr. Trimmer's opinion in her decision. Furthermore, there is no rigid requirement that the law judge specifically refer to every piece of

-15-

evidence in her decision. See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). And there certainly is no requirement that the law judge quote in her decision everything Dr. Trimmer had to say about the plaintiff.

Furthermore, the Commissioner properly notes that "Dr. Trimmer only stated that Plaintiff may overestimate his abilities due to limited insight (Tr. 339), and she stated that in the context of recounting Plaintiff's daily activities, not in her medical source statement" (Doc 21, p. 11). As previously discussed, the plaintiff's description of his daily activities corresponds with substantial evidence of record.

Although Dr. Trimmer opined that the plaintiff "appears to have difficulty learning new tasks," she also noted that the plaintiff appears able to understand and follow simple instructions and directions, has a fair ability to attend to a routine and maintain a schedule, and seems to use fair judgment to make routine decisions (Tr. 339). Accordingly, the law judge reasonably concluded that the plaintiff had the ability to perform "unskilled, simple, routine and repetitive tasks" (Tr. 29). The plaintiff has not demonstrated that the evidence compels any greater mental restrictions. See Adefemi v. Ashcroft, supra.

In sum, the law judge was presented with reports from two examining psychologists. The law judge considered those reports and gave greater weight to Dr. Trimmer's report. Moreover, she adequately and reasonably explained why she did so. In light of the deference that is given to such administrative findings, this court is not authorized to second-guess that determination.

B. The plaintiff next complains that the law judge erroneously discounted his credibility (Doc. 20, pp. 15-17). This contention also lacks merit, as the law judge gave a reasonable explanation, supported by substantial evidence, for finding the plaintiff only partially credible.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, supra, 395 F.3d at 1210. As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge

-17-

determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and she referred to the pertinent regulations and Social Security rulings (Tr. 29). Moreover, she set out the appropriate standard (id.). This demonstrates that the law judge employed the proper analysis. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

In her credibility determination, the law judge gave a cogent explanation for declining to credit fully the plaintiff's subjective complaints. Specifically, the law judge stated (Tr. 29-30):

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are

inconsistent with the above residual functional capacity assessment.

At the outset the undersigned notes that the record is void of any medical evidence prior to late 2007, despite the claimant's allegations of disability in 2000. Thus, the record reveals no worsening of the claimant's conditions to coincide with or for at least six years after the alleged onset date. Further, the record reflects work activity after the alleged onset date. Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported. The undersigned further notes that the claimant's earnings records show similar, minimal pre and post onset earning, indicating the claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments (Exhibits 4D and 1F).

Further, with respect to the plaintiff's allegation of poor memory, the law judge explained that "the record reflects that the claimant has consistently reported a remote history of head trauma. Yet, a February 2008 computer tomography (CT) scan revealed no acute intracranial process. Similarly, in September 2009, the claimant had a normal cerebral angiogram (Exhibits 2F and 3F)" (Tr. 31).

Finally, the law judge said (Tr. 32):

> In rendering this decision, the undersigned also considered the various reports and statements of Rita Messer, the claimant's mother. Notably, Ms. Messer reported that the claimant has a history of drug use, although his use has primarily been in remission at times relevant to this decision. She also reported that the claimant uses an electric scooter for traversing long distances. However, she has indicated that this scooter is not medically necessary, but rather, the claimant uses it because he does not have a car. Ms. Messer has also reported that the claimant engages in various activities of daily living such as shopping, cooking, and visiting with neighbors....
>
> ...
>
> Considering the claimant's activities of daily living, the objective medical evidence, and the medical treatment records discussed above, all of which suggest greater sustained capacity than described in testimony, the undersigned concludes that the claimant's subjective complaints and alleged limitations are not fully persuasive and that he retains the capacity to perform work activities with the limitations set forth above.

This explanation is sufficient to discount the plaintiff's subjective complaints.

See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006).

The plaintiff argues that "[t]he ALJ determined that Plaintiff was not fully credible because 'claimant's earnings record shows similar minimal pre and post onset earning'" (Doc. 20, p. 15). However, what the law judge actually said was that "the claimant's earnings records show similar, minimal pre and post onset earning, indicating the claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments" (Tr. 30). The law judge could reasonably conclude that the plaintiff's work history undermines his allegation of an inability to work due to disabling impairments.

The plaintiff contends that his noncompliance with treatment is a symptom of his "severe memory problem," and should not be a basis for discounting his credibility (Doc. 20, p. 16). In fact, the law judge's mention of noncompliance was made in connection with the law judge's assessment of the plaintiff's diabetes and was not part of a credibility determination (Tr. 30).

Furthermore, contrary to the plaintiff's suggestion, the law judge did not discount the plaintiff's memory problems. Thus, the law judge expressly found that "the claimant has also exhibited poor memory performance on psychological testing with an intelligence quotient (IQ) in the borderline range" (Tr. 26). She stated further that "Dr. Trimmer noted that the claimant's primary deficiency was related to his memory impairment" (Tr. 31). The law judge also pointed out that "the claimant's test results revealed poor immediate and detailed memory" (id.).

The law judge accordingly found that the plaintiff had a severe impairment of borderline intelligence quotient (Tr. 26). In order to accommodate that impairment, the law judge limited the plaintiff to "unskilled, simple, routine and repetitive tasks" (Tr. 29). This limitation reflects the opinion of Dr. Trimmer.

In order to show that the law judge erred with respect to the plaintiff's memory problems, the plaintiff must show that he had functional limitations from his memory problems that were not included in the law judge's determination of the plaintiff's residual functional capacity. In this respect, "a diagnosis or a mere showing of 'a deviation from purely medical

-22-

standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005), quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005); McCruter v. Bowen, supra. Here, the plaintiff makes no effort to show how his memory problems create a specific functional limitation beyond the law judge's residual functional capacity determination.

In sum, the law judge properly applied the Eleventh Circuit pain standard and, based on that standard, made a reasonable and adequately explained decision to decline to credit fully the plaintiff's subjective complaints.

C. The plaintiff contends that the law judge "erred in determining plaintiff's intellectual functioning was borderline rather than mildly mentally retarded, in failing to find a severe impairment of cognitive disorder, and in failing to assess an RFC that takes into consideration those

impairments" (Doc. 20, p. 17).[4]  In this regard, the plaintiff points to his diagnoses of mild mental retardation and cognitive disorder (id.).  The law judge did not ignore these diagnoses, but rather stated that, "[w]hile variably diagnosed, as explained more fully below, the undersigned finds that the claimant's mental deficiency is best categorized as borderline IQ" (Tr. 26).

The plaintiff cannot prevail on this issue simply by arguing that his alleged mild mental retardation and cognitive disorder should have been characterized as severe.  The Eleventh Circuit has held that "step [two] acts as a filter; ... the finding of any severe impairment ... is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). Because the law judge found that the plaintiff has severe impairments, she did not stop prematurely at step two, but proceeded on to the following

---

[4]As the Commissioner notes (Doc. 21, p. 17 n.5), the plaintiff does not challenge the law judge's finding that the plaintiff did not satisfy the criteria of listing 12.05. In fact, at the hearing, the plaintiff's attorney said, "I basically felt like since he had been able to learn how to do some welding, that probably the 12.05 doesn't apply because of having to be before age 22, and it's the fact that he's had head injuries starting in the 1990s that's when that seemed to have happened" (Tr. 60-61). Regardless, in light of the Scheduling Order and Memorandum Requirements, any contention based on listing 12.05 is deemed forfeited (Doc. 14, p. 2). Furthermore, as the Commissioner points out, the diagnosis of mental retardation is not appropriate because the plaintiff does not have significant limitations in adaptive functioning (Doc. 21, p. 18).

steps in the sequential analysis. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987).

Consequently, in order to demonstrate reversible error based upon a mistake regarding a level of severity of an impairment, the plaintiff must show that he had functional limitations from that condition that were not included in the law judge's determination of the plaintiff's residual functional capacity. As indicated, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work." Wind v. Barnhart, supra.

The law judge, as previously discussed, limited the plaintiff "to unskilled, simple, routine and repetitive tasks" (Tr. 29). Although the plaintiff makes the conclusory assertion that an individual with mild mental retardation and a cognitive disorder would have lower functioning expectations (Doc. 20, p. 18), he does not mention, and certainly does not assert, a cogent argument compelling a finding that a specific limitation was omitted from the residual functional capacity finding. See Adefemi v. Ashcroft, supra. Therefore, even if the law judge erred by failing to find at

-25-

step two of the sequential analysis that the plaintiff had a severe impairment of mild mental retardation or cognitive disorder, that error would be harmless.

D. Finally, the plaintiff asserts that the law judge failed to evaluate properly the testimony of his brother, Daniel Messer (Doc. 20, pp. 18-19). This contention is unavailing.

The law judge discussed the testimony of the plaintiff's brother in her decision. In this regard, she said (Tr. 32):

> The undersigned also considered the testimony of the claimant's brother, Daniel Messer. Mr. Messer testified that the claimant is unable to hold a job due to his poor concentration and that his ability to remember has been progressively decreasing in the last 12 years. The undersigned finds this testimony credible, but again affords it little weight to the extent that it conflicts with the above findings and the medical evidence of record as detailed above.

The plaintiff contends that the above explanation "is a form of doublespeak," and "[i]f the brother's testimony is credible, then it must be believed" (Doc. 20, p. 18). It is doubtful that, even if the law judge had erred in this respect, the error would warrant reversal. In fact, however, the law judge did not err.

The Commissioner points out that the brother's testimony consisted of both facts and opinions (Doc. 21, p. 19). Thus, the law judge could have reasonably found that the brother's testimony was credible as to factual matters, but that his opinions were outweighed by medical evidence. As the Commissioner persuasively states, "the ALJ considered the testimony and found that it was sincere, but concluded that other evidence such as the opinion of Dr. Trimmer constituted a more complete and informed assessment of Plaintiff's abilities and limitations" (id.).

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 16th day of September, 2014.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE